James N. LONG, an individual, and Long's Electronics, Inc., a corporation, Plaintiffs–Appellants,

v.

Robert S. COOPER, an individual, d/b/a Coop's Satellite Digest; and West Indies Video, Ltd., a corporation, Defendants–Appellees.

No. 87–7254.

United States Court of Appeals, Eleventh Circuit.

July 8, 1988.

Patrick & Lacy, P.C., J. Vernon Patrick, Jr., Lisa J. Collins, Birmingham, Ala., for plaintiffs-appellants.

Hollinger F. Barnard, Johnston, Barton, Proctor, Swedlaw & Naff, Gilbert E. Johnston, Jr., James C. Barton, Birmingham, Ala., for defendants-appellees.

Before ANDERSON, EDMONDSON and GOODWIN[*], Circuit Judges.

PER CURIAM:

The issue before us on appeal is whether the district court correctly held that appellants James Long and Long's Electronics are limited public figures. We conclude that appellants are private figures and therefore we vacate the summary judgment entered in favor of appellees Robert Cooper and West Indies Video, Ltd.

This case arises from an editorial column which appeared in the January 1, 1985, edition of *Coop's Satellite Digest*, a bi-monthly trade journal published by appellee West Indies Video, Ltd. Approximately twenty percent of the column discussed the topic of discounting in the satellite television equipment industry. *Coop's Satellite Digest* is a publication designed for and addressed to retail satellite television dealers; it has approximately 1,850 subscribers throughout the English-speaking world. Appellee Robert Cooper authored the column and edited the magazine.

Appellants James Long and Long's Electronics brought this action against Cooper and West Indies Video, Ltd., alleging that numerous statements in the column were defamatory to them.[1] James Long is the president of Long's Electronics, a closely-held Alabama corporation which sells satellite television equipment wholesale to qualified dealers nationwide, consumer electronic products retail through seven outlets in Alabama and Tennessee, and audiovisual equipment by mail or telephone order to institutions across the United States.

Cooper and West Indies Video moved for summary judgment before the district

---

[*] Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. The complaint set forth the following allegedly defamatory excerpts from Cooper's article:

(1) "Jimmy Long, for example, works in the seven to seventeen percent profit region. He buys discontinued goods or factory mistakes; overstocks which some hapless OEM got stuck with because the gear didn't sell as well as expected. Often it didn't sell as well as expected because it didn't work as well as expected."

(2) "Service and knowledge. Certainly the man who backs his beat-up pick-up truck to one of Jimmy Long's loading docks can anticipate very little of either commodity."

(3) "The buyer at Long's is gambling that for his discounted price, he will somehow get the 'bargain' he anticipates. He doesn't know, for example, that the receiver being so terribly price slashed by Long's is discontinued nor does he know that Long bought perhaps 11,000 of these receivers at an OEM 'going out of business sale.' He also doesn't know that the receiver's failure to perform as anticipated has subjected the OEM to tremendous cash crunch pressures leading eventually to the supplier going 'upside down.'"

(4) "The whole operation is a 'house of cards' starting with the OEM who is forced to empty his warehouse of slow-moving or non-moving products at greatly reduced prices just to stay in business."

(5) "Jimmy Long is not the problem here; every industry, every field has surplus merchandise that needs to be moved because somebody, some place has made a business error."

(6) "If Jimmy Long didn't do this, somebody else would pop up doing the same thing."

(7) "Jimmy Long simply supplies a conduit through which the overstocked, the slow to move, and the downright junk can be flushed. If you lived on a farm and you had a septic tank, you'd be in a world of hurt if somebody wasn't willing to come along and empty your tank every now and again!"

(8) "Not everything Jimmy Long sells is being discontinued."

(9) "Any antenna brands you can find at Long's is seldom the 'best in its class' in our industry."

(10) "Yelling loudly about discounters such as Long's will not make them go away. They truly are not in the same business you are in."

court on the grounds that Long and Long's Electronics were limited public figures and had failed to produce any evidence of actual malice, that the cited portions of Cooper's column lacked defamatory content, that the disputed statements in the column were not false, and that the column represented privileged editorial opinion. The district court granted the summary judgment motion on the basis that Long and Long's Electronics were limited public figures and that there was no evidence of actual malice on the part of Cooper and West Indies Video.[2]

## I. DISCUSSION

In the present posture of this appeal, we need not discuss the standard of care (e.g. actual malice, negligence, etc.) required to recover compensatory or punitive damages for various combinations of public and private plaintiffs and speech. *See Philadelphia Newspapers v. Hepps*, 475 U.S. 767, 774–776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986); *Silvester v. American Broadcasting Companies, Inc.*, 839 F.2d 1491, 1493 (11th Cir.1988). The district court's grant of summary judgment was based on its conclusion that Long and Long's Electronics were limited public figures, thus requiring proof of actual malice to support any recovery of compensatory damages. Because we conclude that appellants are private figures, they are not required to show actual malice to recover compensatory damages. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974). Thus, the judgment of the district court must be vacated.

The only issue we address is whether Long and Long's Electronics[3] are limited public figures.[4] In *Silvester*, we adopted the three-part analysis for establishing limited public figure status set forth in *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1297 (D.C.Cir.1980). As we stated in *Silvester*, "[u]nder the *Waldbaum* analysis, the court must (1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether 'the alleged defamation [was] germane to the plaintiffs' participation in the controversy.'" 839 F.2d at 1494, *quoting Waldbaum*, 627 F.2d at 1297.

This case can be decided on the narrow ground that Long's Electronics did not thrust itself into a public controversy. We assume *arguendo*—but expressly do not decide—that the first and third prongs of the *Waldbaum* test are met in this case, i.e. that there was a preexisting public controversy about the competition between discount wholesalers and specialty retailers of satellite television equipment and that the allegedly defamatory publication was germane to Long's Electronics' participation in this controversy.

The second prong of the *Waldbaum* test "addresses the extent to which the plaintiff[ ] [is] involved in the public controversy." *Silvester*, 839 F.2d at 1496. It is not disputed that Long's Electronics was one of the leading discount sellers of satellite television equipment in America. It also is not disputed that much of Long's Electronics' advertising involved comparisons of its prices to "list" prices, that it did a high volume of direct mail advertising, and that it touted itself as "The Nation's Largest TVRO Dealer." There is no evidence in the record, however, that Long's Electron-

---

**2.** Our conclusion that appellants are private figures requires reversal, and thus we do not address the actual malice issue. We also decline to address appellees' arguments relating to defamatory content, falsity, and privileged opinion because the district court did not address them.

**3.** The allegedly defamatory publication dealt primarily with issues more directly applicable to Long's Electronics than to Long himself. Consequently, if Long's Electronics is not a limited public figure for the purpose of the alleged

public controversy which was the focus of Cooper's article, Long certainly is not a limited public figure for this purpose. In light of the conclusion that Long's Electronics is not a limited public figure, it is not necessary to analyze James Long's status separately.

**4.** Cooper and West Indies Video do not assert that Long and Long's Electronics are general purpose public figures and they clearly are not public officials.

ics—either through its advertisements or otherwise—ever commented upon or in any way addressed the controversy over the relative virtues of discount wholesalers vis-a-vis specialty retailers of satellite television equipment. Nor is there any evidence that Long's Electronics made direct, specific comparisons of its prices to those of identified specialty dealers.

We can assume *arguendo* that a company and its principal could create advertisements that might thrust them into a controversy such as the one in this case. However, the advertising used by Long's Electronics does not come close to rising to such levels; indeed the form and flavor of Long's Electronics' advertisements are well within the mainstream of normal advertising practices. Moreover, Long's Electronics in no way attempted to influence the outcome of the alleged controversy.

Our conclusion with respect to this second *Waldbaum* prong is consistent with other defamation cases involving commercial activity.

In *Waldbaum*, the court held that the outspoken and activist president of the nation's second largest cooperative was a limited public figure for controversies surrounding certain aspects of the supermarket industry. The plaintiff, Eric Waldbaum, was the president of a large cooperative company which ran a supermarket chain, among other things. The cooperative held a unique position within the supermarket industry. Prior to the defamatory publication, Waldbaum's company was the subject of many news reports. The company, under Waldbaum's direction, pursued "pathbreaking marketing policies," *id.* at 1299, and vigorously publicized its innovations in an effort to persuade the supermarket industry as a whole to change its policies. Waldbaum himself spent much time and effort to "educate the community at large," *id.*, and he "attempt[ed] to influence the policies of firms in the supermarket industry and merchandising generally" by writing articles and holding press conferences on the policies he advocated. *Id.* at 1300. The court concluded that there was a legitimate public controversy over

unit pricing, open dating, and other merchandising innovations in the supermarket industry and that it was clear that Waldbaum had attempted to thrust himself into the middle of this controversy in an effort to influence its outcome.

By contrast, in the present case, there is no evidence that Jimmy Long or Long's Electronics thrust themselves into the alleged controversy in any manner, much less in the obvious manner Waldbaum did.

*Bruno and Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir.1980), was a defamation case involving issues of commercial concern similar to those involved here. Bruno & Stillman was the largest manufacturer of commercial fishing boats in New England and enjoyed a high reputation for quality. Globe Newspapers published a series of investigatory articles which alleged that certain of Bruno & Stillman's boats had structural and other manufacturing defects. Among the sources quoted in the article were Bruno & Stillman customers who made complaints about the inferior quality of their boats.

In finding that Bruno & Stillman was not a limited public figure, the court relied in part on the absence of any evidence that Bruno & Stillman had thrust itself into the vortex of a controversy. The court noted that although Bruno had increased its production volume ten-fold in a relatively short period of time, the record was devoid of evidence about its advertising practices. The court indicated that the "scale or nature" of a company's advertising efforts was relevant to the determination of whether a company thrust itself to the center of a controversy in that through its advertising a company could " 'invite[ ] public attention, comment, and criticism.' " *Id.* at 592, *quoting Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 274 (3d Cir.1980). However, without evidence of unusually concentrated advertising efforts, the court concluded that a company is not a limited public figure merely because it is well recognized and successful in its particular field. *Id.*

*Bruno* is quite similar to the issue at hand. Here, the record offers no evidence of unusual advertising practices. Although Long is well known in the satellite television industry, it has done nothing to thrust itself into the alleged controversy. As in *Bruno*, the mere fact that Long's Electronics is successful and a leader in its field is insufficient to convert it into a limited public figure.

## II. CONCLUSION

We conclude that Long and Long's Electronics neither thrust themselves to the forefront nor were drawn into a preexisting public controversy in an effort to influence its outcome. Their prominent position in the industry, standing alone, does not create a sufficient nexus between Long and Long's Electronics and the purported controversy.

For the foregoing reasons, the summary judgment entered by the district court is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.